LARAND LEISURELIES,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

International Ladies' Garment Workers'
Union, AFL–CIO, Intervenor.

No. 74–2325.

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1975.

Decided Oct. 1, 1975.

As Amended Oct. 15, 1975.

W. Bruce Baird, Matthew R. Westfall, Middleton, Reutlinger & Baird, Louisville, Ky., Jay S. Siegel, Siegel, O'Connor & Kainen, Hartford, Conn., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., Hope P. Zelasko, Emil C. Farkas, Regional Director, 9th Region, N.L.R.B., Cincinnati, Ohio, for respondent.

Herbert L. Segal, Irwin H. Cutler, Jr., Segal, Isenberg, Sales, Stewart & Nutt, Louisville, Ky., for intervenor.

Before MILLER and LIVELY, Circuit Judges, and FEIKENS,* District Judge.

WILLIAM E. MILLER, Circuit Judge.

This is a petition for review of an order of the National Labor Relations Board finding the petitioner in violation of Section 8(a)(1) of the National Labor Relations Act.[1] The NLRB has filed a cross-application for enforcement of the order.

The circumstances giving rise to the controversy are, in summary, as follows: Petitioner, a Kentucky corporation, with about 200 employees, is engaged in the manufacture of women's and children's clothing at its plant in Monticello, Kentucky. In December 1972, the International Ladies' Garment Workers' Union, AFL–CIO, hereinafter referred to as the Union, began organizing petitioner's employees. Petitioner's President Brownstein became aware of the Union's organizing activity on December 29, and on January 2, 1973, met with a large group of employees in the plant confer-ence room. During the course of this meeting Brownstein announced that he had previously met with two other company officials and that they had decided to grant the employees an additional paid holiday. Brownstein testified that he had intended to announce the additional holiday at the annual Christmas party on December 21 but through oversight had failed to do so. The additional holiday was subsequently cancelled because, as Brownstein testified, legal counsel had advised that the granting of the additional holiday could be construed as an unfair labor practice.

On January 17, 1973, Union Agents Jenkins and Freeland came to petitioner's plant to demand recognition for the Union. Accompanied by a group of from 40 to 120 employees, Jenkins went to the plant office, informed petitioner's Director of Manufacturing Ermini that a majority of the employees had authorized the Union to bargain for them and demanded recognition. Ermini disclaimed authority to deal with the situation. At the suggestion of Jenkins, Ermini telephoned Brownstein. Jenkins and the employees remained in the lobby of the plant office chanting, "we want a union." After about 30 minutes, Plant Manager Burnham informed Jenkins that Brownstein would obtain advice from his lawyers and contact Jenkins later that day. Burnham then instructed the employees to return to their jobs. Although the employees did return to their jobs almost immediately, they did not do so until they received a direct instruction from Jenkins. As a result of these events, 90 employees received written reprimands for leaving their places of work without permission. The reprimand included a warning that future vi-

* The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), provides:

§ 158. Unfair labor practices

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title [§ 7 of the Act];

\* \* \* \* \* \*

olations of plant rules might subject the employee to discharge.

On January 28, 1973, union organizers distributed smocks on which the name of the Union had been printed. The next day about 10 employees wore the smocks to work. One of these employees, Lynn Denney, testified that her supervisor Velma Smith told her: "Lynn, I want to tell you for your own good before the bell rings that they will probably take you to the office and make you take it [the smock] off." Smith denied making the statement. Denney continued to wear the smock, and Smith did not confront the other employees in her section who were wearing smocks.

On or about February 28, 1973, Calvin Upchurch and Clyde Denney, employees in the shipping department, posted a union handbill on Upchurch's workbench. When Upchurch refused to remove the handbill at the request of his supervisor Campbell, Campbell consulted with Ermini and then removed the handbill, folded it, and placed it in Upchurch's pocket. Shortly thereafter, perhaps the next day, Upchurch and Denney pinned union handbills to their jackets which they hung on nails 5 or 10 feet from a water fountain used not only by employees in the shipping department but also by other employees. Some of these employees coming to drink water made comments about the handbills. These comments disturbed Campbell who asked Upchurch and Denney to remove the handbills from their jackets. When they refused, Campbell removed the handbills, tore them up, and threw them in the trash. Upchurch and Denney then pinned the handbills to the back of their shirts, but Campbell, although he saw the handbills, made no comment or attempt to remove the handbills. The two men continued to wear handbills in this manner for a considerable time.

Sharon Brown, employed by petitioner as a payroll clerk until she quit on March 14, 1973, testified that around the last of February she was asked by Plant Manager Burnham if she knew about the Union and whether they were going to strike the following Tuesday. Brown answered that she knew nothing about the Union. She also testified that about a week later Personnel Manager Preston interviewed her after she told him she was thinking about quitting. She quoted Preston as saying: "I heard that you were working for the Union today . . . if I knew you or anyone else was working for the Union, I'd get rid of you and wouldn't this be a perfect chance to get rid of you." Preston denied making the statement but did testify that he told her he had heard that she was for the Union but that he didn't believe it because he had trusted her completely.

When it became evident that the Union would not be recognized, a petition for an election was filed with respondent. An election was scheduled for April 5, 1973. About March 1, 1973, a "Strike Committee" of 22 employees was formed. Jenkins testified that the committee was to serve as "a pressure release for any strike activity" and "had no authority to pull the workers out, only to meet and discuss and then talk to [Jenkins] about the possibilities before anything happened. . . ." A member of the committee, Rains, testified that the committee had full power to call a strike. At meetings of the committee on March 1 and March 17, various allegedly unfair labor practices were discussed. Rains testified that on March 17 "we discussed that if we did go out on strike it would be an unfair labor practice strike." Signs were made reading "On strike against Larand Leisurelies, Inc., for unfair labor practices." A decision to strike was made, but after consulting with Jenkins, who had not been present at the meeting, the committee apparently decided to await the results of the election scheduled for April 5.

The Union won the election conducted by respondent on April 5. The petitioner filed objections to the election on April 12. On April 6 the Union's lawyers called upon petitioner to bargain. Petitioner refused this request pending a ruling on the objections. The election was

subsequently set aside by respondent's regional director. On April 13 two employees, Bell and Brown, were discharged. A group of employees came to Jenkins complaining about the discharges and requesting a strike. Jenkins then filed an unfair labor practice charge on April 20 in connection with the discharge of Bell and Brown, which was later dismissed by respondent's regional director. On April 25, Jenkins called a meeting attended by about 115 employees at which Jenkins discussed what the Union considered to be unfair labor practices. At the meeting it was announced that the Union had decided to call a strike. There being no objections from any of the employees, no formal strike vote was taken. The strike began on April 26. On the first and second days of the strike, Plant Manager Preston took pictures at the picket line but no photographs were introduced in evidence before the administrative law judge.

As a result of the foregoing events, various charges were filed with respondent by the Union. A hearing was held on the charges before an administrative law judge. The administrative law judge concluded that petitioner had committed unfair labor practices in violation of Section 8(a)(1) of the National Labor Relations Act: (1) in issuing written reprimands to employees because they engaged in protected activities, (2) in threatening to discharge employees for engaging in such protected activities, (3) in granting and then rescinding a paid holiday after learning of the union organization, (4) in interfering with employees' organizing activities, (5) in threatening employees with layoff or discharge if they engaged in such activities, (6) in removing from employee's personal possession union handbills, and (7) in photographing employees on the picket line. The administrative law judge also concluded that the strike was an economic strike rather than an unfair labor practice strike. This conclusion was based on a finding that the strike was primarily caused by the discharge of Bell and Brown and by the apprehension of future similar discharges.[2]

The Union, the petitioner, and respondent's general counsel filed various exceptions. After a review of the record, the administrative law judge's decision, and the exceptions, a three-member panel of the Board affirmed the administrative law judge's decision except as to his conclusion that the strike was an economic strike. The Board concluded that the strike was an unfair labor practice strike because it had been caused, at least in part, by the petitioner's unfair labor practices. The Board then issued an order requiring petitioner to cease and desist from the practices found to be in violation of Section 8(a)(1) of the Act, to expunge the written reprimands from employees' personnel files, to reinstate striking employees to their former or substantially equivalent positions, and to post appropriate notices.

■■■ Petitioner argues that Campbell's removal and destruction of the union handbills pinned to Upchurch's and Denney's jackets was justified because the handbills were disruptive of production and efficiency. The wearing of union insignia has been held to be a protected activity in furtherance of the rights of self-organization granted by Section 7 of the Act.[3] *Republic Aviation*

---

**2.** The discharge of Bell and Brown was not alleged to be an unfair labor practice.

**3.** Section 7 of the Act, 29 U.S.C. § 157, provides:

§ 157. *Right of employees as to organization, collective bargaining, etc.*

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

*Corp. v. NLRB,* 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). There is an exception to this rule where there are "special considerations relating to employee efficiency and plant discipline." *Fabri-Tek, Inc. v. NLRB,* 352 F.2d 577, 585 (7th Cir. 1965).[4] The court in *Fabri-Tek* found that "out-size" buttons portraying the union insignia, "vari-vue" buttons, the wearing of buttons as earrings, and the use of "out-size" letters stenciled on the back of a blouse reading "Vote I.B.E.W." could tend to distract the attention of employees engaged in the extraordinarily complex process of manufacturing magnetic memory devices for the computer industry. No such "special circumstances" were found to exist in this case.

■■ Petitioner next argues that the Board erred in finding that Personnel Manager Preston unlawfully interrogated employee Brown. Interrogation of an employee about union activities violates Section 8(a)(1) when its probable effect is to inhibit such activity. *NLRB v. Southern Electronics Co.,* 430 F.2d 1391 (6th Cir. 1970). Giving full credit to Preston's version of the conversation, the Board found that Preston's statement called at least for a tacit admission by Brown that she was sympathetic with the Union, and therefore constituted unlawful interrogation. Although a different inference might have been drawn from Preston's statement, we hold that the Board's finding on this point was supported by substantial evidence on the record considered as a whole. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■■ Petitioner also argues that the photographing of pickets was not a violation of the Act because photographs were taken on the advice of counsel to support a petition for injunctive relief. Photographing of pickets does not violate Section 8(a)(1) of the Act where the photographs are taken to establish for purposes of an injunction suit that pickets engaged in violence. *Stark Ceramics, Inc.,* 155 N.L.R.B. 1258, *enforced,* 375 F.2d 202 (6th Cir. 1967). However, if no photographs are introduced into evidence in the injunction proceeding, it may be inferred that the photographing was not intended for a valid purpose but, on the contrary, was intended to interfere with the activity secured by Section 7 of the Act. *NLRB v. Rybold Heater Co.,* 408 F.2d 888 (6th Cir. 1969). In this case, as in *Rybold,* there is no evidence that petitioner used any photographs in support of an injunction sought on May 31, 1973, five weeks after the strike began.

■ Petitioner also seeks to challenge other unfair labor practice findings of the Board. The Court finds that these challenges are not subject to judicial review because petitioner failed to file exceptions with the Board as required by Section 10(e) of the Act[5] and Section

---

4. *See also NLRB v. Harrah's Club,* 337 F.2d 177 (9th Cir. 1964); *NLRB v. Essex Wire Corp.,* 245 F.2d 589 (9th Cir. 1957); *Caterpillar Tractor Co. v. NLRB,* 230 F.2d 357 (7th Cir. 1956).

5. Section 10(e) of the Act, 29 U.S.C. § 160(e), provides:

(E) The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or re-straining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circum-

102.46(h) of the Board's rules and regulations.[6] *Geauga Plastics Co. v. NLRB,* 404 F.2d 1382 (6th Cir. 1968), *cert. denied,* 395 U.S. 944, 89 S.Ct. 2017, 23 L.Ed.2d 463 (1969). Although Section 10(e) of the Act does excuse failure to raise an objection before the Board where extraordinary circumstances exist, the Court finds that no such circumstances are present in this case.

█ We turn to petitioner's contention that the Board's finding as to the nature of the strike was not supported by substantial evidence on the record as a whole. Although the Board is free to find facts and to draw inferences therefrom different from those of the administrative law judge, *NLRB v. Wooster Div. of Borg-Warner Corp.,* 236 F.2d 898 (6th Cir. 1956), *rev'd on other grounds,* 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1957), the reviewing court has an obligation to examine more carefully the evidence in cases where a conflict exists. *Jervis Corp. v. NLRB,* 387 F.2d 107 (6th Cir. 1967); *NLRB v. Bin-Dicator Co.,* 356 F.2d 210 (6th Cir. 1966); *United Fireworks Mfg. Co. v. NLRB,* 252 F.2d 428 (6th Cir. 1958). Yet, this Court must uphold the findings of the Board if we find substantial evidence on the record as a whole to support them. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

█ If an unfair labor practice is a "contributing cause" of a strike, then, as a matter of law, the strike must be considered as an unfair labor practice strike. *NLRB v. Wooster Div. of Borg-Warner Corp.,* 236 F.2d 898 (6th Cir. 1956), *rev'd on other grounds,* 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1957). The burden is on petitioner to show that the strike would have occurred even if petitioner had not committed unfair labor practices. *Philip Carey Mfg. Co. v. NLRB,* 331 F.2d 720 (6th Cir.), *cert. denied,* 379 U.S. 888, 85 S.Ct. 159, 13 L.Ed.2d 92 (1964); *NLRB v. Wooster Div. of Borg-Warner Corp., supra.*

Petitioner argues, citing *Winter Garden Citrus Products Cooperative v. NLRB,* 238 F.2d 128 (5th Cir. 1956), that there must be proof of a causal connection between unfair labor practices and the resulting strike to support a finding that the strike was caused by the unfair labor practices. Although the administrative law judge found that the strike was *primarily caused* by the discharge of Bell and Brown and by the apprehension of future discharges, there is no finding that unfair labor practices were *not contributing* causes of the strike.

█ Considering the record as a whole, we believe that there is substantial evidence that the unfair labor practices committed by petitioner were con-

stances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and

shall file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate United States court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of Title 28.

6. Section 102.46(h) of the Board's rules and regulations, 29 C.F.R. § 102.46(h), provides:

   \*    \*    \*    \*    \*    \*

(H) No matter not included in exceptions or cross-exceptions may thereafter be argued before the Board, or in any further proceeding.

   \*    \*    \*    \*    \*    \*

tributing causes of the strike. At the employee meetings on March 1, March 17, and April 25, petitioner's unfair labor practices were discussed, and there is substantial evidence that the employees were inclined to strike before the election and before Bell and Brown were discharged. Accordingly, we must uphold the Board's finding that the strike was an unfair labor practice strike from its inception.

Enforcement of the Board's order is therefore granted.