Marie SCOTT, Individually and as Acting President, Transport Workers Union of America, Local 544, and Lori Fahs, Individually and as Acting President, Transport Workers Union of America, Local 543, Plaintiffs,

v.

AMERICAN AIRLINES, INC., Defendants.

No. CV 80–0176.

United States District Court, E. D. New York.

April 15, 1980.

O'Donnell & Schwartz by Asher W. Schwartz, New York City, for plaintiffs.

Poletti Freidin Prashker Feldman & Gartner by Eric Rosenfeld, New York City, for defendants.

## MEMORANDUM & ORDER

PLATT, District Judge.

Plaintiffs, Marie Scott, ticket lift agent, and Lori Fahs, freight agent, employees of the defendant, seek a preliminary injunction restraining the defendant, its officers, agents and employees (i) from in any manner or by any means directing the plaintiffs to refrain from wearing an insignia, pin or button containing a TWU logo on their clothing, including any uniform they may be required to wear by defendant and (ii)

from discharging or in any other way disciplining or threatening to discharge or discipline them because of their wearing of any such insignia during working hours on the property of the defendant and requiring defendant to issue and post notices of such injunction. The return date of their initial motion was February 22, 1980, at which time it was agreed to hold a hearing as soon thereafter as might be possible consistent with the Court's and the attorneys calendars.

Accordingly, a hearing was held on the morning of March 5th at which time testimony was taken from the plaintiffs and from Charles A. Pasciuto, defendant's Vice President of Employee Relations. The parties also offered in evidence the testimony taken from Edward P. Donovan, defendant's Manager of Personnel in New York, Hugh T. Molloy, an employee representative for the defendant, the said Charles A. Pasciuto, and Ernest Mitchell, Director of the Air Transport Division of the Air Transport Worker's Union and Vice President of the International Union in the related case entitled *American Airlines v. Transport Workers Union, et al.*, CV–80–0101 (E.D.N.Y.).

Ms. Scott testified that she is presently a ticket lift agent in the employ of the defendant at the Metropolitan Airport in Detroit, Michigan, and that she is in her 27th year as an employee of the defendant. Her present position requires her to provide passenger services at the various departure gates of the defendant, including selling of tickets, issuing boarding passes, taking tickets and dispatching the aircraft. Ms. Scott has won numerous commendations, certificates and awards, including three watches for excellence in passenger service and has never been subjected to disciplinary action until the incidents which are involved in this case.

In August of 1979 Ms. Scott signed a membership card and became a member of the Transport Workers Union of America ("TWU"), Local 544, and was later designated acting president of that Local pending certification or recognition pursuant to

the Railway Labor Act ("RLA"). Thereafter, she joined the campaign to gain from the defendant recognition of the TWU as the collective bargaining representative of the agent craft of its employees. Ms. Scott attended an organizational union meeting in October of 1979 in Dallas, Texas, at which meeting TWU pins [1] were distributed and she started wearing the same on her uniform to let everyone know that she was supporting the TWU and to encourage them to join the union.

In November of 1979, Ms. Scott was questioned by her Group Supervisor, Paul Mason, about the TWU pin and was advised to remove the same because it was unauthorized. She did so.

Ms. Scott returned from a vacation on January 13, 1980, and two days later, following her late return from a lunch, she was stopped by Mr. Mason and directed to remove her pin. Later in that day, i. e., January 15th, she was directed to appear in the office of Mr. Hayes Jones, Manager of Passenger Service, and after a disagreement about her authorization to return late from lunch, she returned to Mr. Jones' office with Mr. Bill Casper, President of TWU Local 521 at which time Mr. Jones instructed her not to put the pin back on and Mr. Casper expressed his opinion that she had the right to wear the same.

On January 16, 1980, Ms. Scott returned to work wearing several different non-union pins and buttons, as well as her TWU pin. Mr. Mason, who noticed the same earlier in the day, summoned her to his office with a Mr. Stan Sims and they advised her that they had reviewed company policy and directed her again to remove the TWU pin. Mr. Mason repeated these directions in the presence of Mr. Cutting, a union representative.

On Thursday, January 17, 1980, Mr. Jones was waiting for Ms. Scott at 7:30 a. m. when she arrived at the time clock. She again was wearing numerous pins and buttons on her uniform and Mr. Jones said he wanted to speak to her in his office. When they arrived there Mr. Jack London, another supervisor, was also present and Ms. Scott asked whether she could bring someone into the meeting. Mr. Jones directed her to remove her union pin. Ms. Scott asked why and he replied because he was telling her to do so.

Approximately 1:30 p. m. Mr. Mason sent for Ms. Scott and she persuaded Mr. Cutting to go with her but he was refused entrance into Mr. Mason's office by Mr. Jones. When Ms. Scott complained that she needed a witness, Mr. Jones left the office and Mr. Mason handed her a paper instructing her to "remove the unauthorized button or pin, and if she failed to do so, you are instructed to leave the company premises immediately. If you leave, you will not be paid for the time away." (Ex. "E"). Mr. Mason then handed her a form C–314 citing her for insubordination which bore the date of January 18, 1980, Mr. Mason subsequently gave her another disciplinary form bearing the date of January 17th.

Thereafter, Ms. Scott went on an "overage leave" on which she remained at the time of the hearing.

Ms. Scott returned to the airport on January 23d, 28th, 30th and 31st and was directed on the second and third occasions to leave the premises and on the last occasion was given a note from Mr. Mason directing her to stay off the premises.

On cross-examination Ms. Scott admitted that her wearing of the union pin caused others to engage in conversations with her with respect to the pros and cons of joining the TWU and the number and frequency of these conferences increased after she started to wear the pin.

Plaintiff Lori Fahs testified that she had been a freight agent in the employ of the defendant for thirteen years; that she had become interested in securing recognition for the TWU prior to July of 1979; that she started wearing a union pin in November

---

1. The pins, a number of which were received in evidence in this and the related case, are relatively small and inoffensive.

and that her purpose in wearing the pin was to support the union.

Around Thanksgiving her immediate supervisor, Mr. Philip Wiley, called her into his office and asked about her union pin and then directed her to remove it. Ms. Fahs said that she would not do so. Mr. Wiley asked her to remove the pin that afternoon and several times in the ensuing days.

On Thursday, November 29, 1979, Mr. Richard Sutton, supervisor of the four to midnight shift demanded that she get into his office as she was leaving for the day and asked her to remove her union pin in the presence of Messrs. John Lowald and John Sterns. Ms. Fahs refused to do so. He then wrote out an "AOI" form suspending her "pending further investigation".

On the following day, which was her day off, Ms. Fahs received a telephone call from Mr. Wiley stating that they needed her to report for work on Saturday at 7:30 a. m., which she did.

On Monday, December 10, 1979, Ms. Fahs was stopped by Mr. Sutton and instructed to remove her union pin which she did not do.

On December 18th while Ms. Fahs was working at the customer counter Mr. Robert Johnston, one of plaintiff's managers, observed her and thereafter she was informed he wanted to see her in his office. They talked for about an hour and at the conclusion thereof Mr. Johnston warned Ms. Fahs that by wearing the pin she was risking insubordination charges and further reprimand.

On January 2, 1980, Mr. Wiley called her into his office and directed her to remove her pin. Ms. Fahs asked for a witness and he threatened to give her a C–314 disciplinary form but did not do so. On January 3d Mr. Wiley issued a C–314 disciplinary notice to her in his office citing her "wearing a button" on her lapel.

On January 10th Mr. Wiley directed her again to remove the union pin which she declined to do and she was given a second C–314 notice suspending her for one day, i. e., January 15, 1980. On the latter day she did not work and was not paid.

Defendant called one witness, Mr. Charles Pasciuto, Vice President of Employee Relations, who testified that there was a difference between flight attendants who were members of a certified union who wore pins and the plaintiffs who were not members of such unions.[2] In the case of the flight attendants, there was no damage to productivity and no interference with work, whereas in the case of the unorganized agents, the wearing of pins was a form of solicitation which provoked discussion and controversy over the pros and cons of unionism and this reflected upon the agents productivity, work habits and their customer relations.

2. At the related hearing for a preliminary injunction (*American Airlines v. Transport Workers Union, et al., supra*) the testimony which was received in evidence in this case, Mr. Pasciuto admitted that the defendant permits uniformed personnel who are members of a certified union to wear union pins:

"A. If I read that letter correct, he (Mr. B. A. Wingren, a management employee) implies that pilots, flight attendants and other organized people may wear the union that they are represented by, their pin of their union, providing they meet acceptable standards.

Q. Is that true?

A. That is true.

Q. Well, I show you this pin of the Transport Workers Union. Have you seen this before?

A. Yes.

Q. Do you have one?

A. I used to, Mr. Schwartz. They made me an honorary member years ago.

Q. Does this meet acceptable standards, in your judgment?

A. If they were the certified and authorized bargaining agent for these people, in all probability it would be certified to be okay. But, Mr. Schwartz, I've got to be quick to add, they are not represented by the TWU. We won't allow our employees to wear this uniform or Teamster button or shoreman button or any other button, until they're properly represented or certified." Tr. p. 130

And at the hearing here Ms. Scott testified that agents wore all sorts of pins (Cowboys, Elks, U.S. Flag, etc.,) without objection from management.

The question presented therefore is whether the defendant's prohibition against agents wearing union pins, and its disciplinary actions with respect to those who do, together constitute unlawful interference with the right of employees to organize and form a labor union to represent them.

Section 2 (Third) of the RLA (45 U.S.C. § 152 (Third) provides in pertinent part: "Representatives, for the purpose of this Act shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall *in any way* interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purpose of this Act need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, coerce, seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier." (Emphasis added).

and (Fourth) provides in such part:

" . . . it shall be unlawful for any carrier to interfere *in any way* with the organization of its employees . . . or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, . . . " (Emphasis added).

Section 8(a)(1) under the Labor Management Relations Act (29 U.S.C. § 158(a) provides similarly

"It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7 [the right to self-organization, to form, join, or assist labor organizations]; (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it; . . . "

and the Supreme Court has relied on that Act in construing the RLA, *Bros. of R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969).

Although they are not in complete agreement, the cases appear to hold that except where the employer is able to prove an effect on employee efficiency, safety or personnel friction or is able to prove a consistent policy with respect to the prohibition of wearing jewelry of any kind on a uniform for public and/or customer relations purposes, an employer may not interfere with employees right to organize by preventing the wearing of union pins or imposing discipline by reason thereof and this is particularly true, where, as here, other employees are or have been permitted to wear union pins. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *NLRB v. Harrah's Club*, 337 F.2d 177 (9th Cir.1964); *Davison-Paxon Co., Div. of R. H. Macy & Co. v. NLRB*, 462 F.2d 364 (5th Cir.1972); *Lar and Leisurelies, Inc. v. NLRB*, 523 F.2d 814 (6th Cir.1975); *Adams v. Federal Exp. Corp.*, 470 F.Supp. 1356 (W.D.Tenn.1979).

In the *Adams v. Federal Exp. Corp.* case, the Court said (470 F.Supp. at 1362–1363):

"We conclude that Taylor's order to Adams to remove the Teamster button and Adams' subsequent discharge for refusing to remove the button unlawfully coerced Adams and other employees in their selection of a bargaining representative in violation of § 152 (Third) and (Fourth). We reach this conclusion because the admitted purpose of Taylor's order was to cover up visible expressions of support for the Teamsters simply because such expressions of support might be 'disruptive' or 'inflammatory.' We believe that employees have the right to visibly demonstrate their support or opposition to a particular bargaining representative absent some exceptional reason for curtailing such expressions. Here, the suggested reason of potential foreign object damage was clearly an afterthought and was not the basis of the order or the decision to terminate Adams.

\* \* \* \* \* \*

"The right of employees to wear union insignia, including buttons, has long been

**420**

protected under the NLRA, and discharge of employees for wearing such insignia normally is held to violate 29 U.S.C. § 158(a)(1) and (3). *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 802–803, 65 S.Ct. 982, 987, 89 L.Ed. 1372 (1945); *Lar and Leisurelies, Inc. v. NLRB*, 523 F.2d 814, 818–819 (6th Cir.1975). The Sixth Circuit has carved out an exception to this rule 'where there are "special considerations relating to employee efficiency and plant discipline." ' *Lar and Leisurelies, supra* at 819. Defendant has not demonstrated that the wearing of Teamster buttons made its operation any less efficient and, despite Taylor's belief that the buttons were 'disruptive,' defendant has not demonstrated that any disciplinary problems were attributable to the buttons."

In the case at bar, there is no question but that Mlles. Scott's and Fahs' purpose in wearing union pins was to promote the TWU as their representatives and to urge their fellow agents to join. Defendant may not interfere with this right absent a more significant showing of disruption to efficiency, safety or personnel relations or harm to customer relations than was presented here. Of particular significance is the undisputed fact that the defendant permitted all of its employees who were members of certified unions to wear union pins on their uniforms during their working hours on the defendant's premises even when they were in daily contact with their fellow employees and the airlines customers. Under the circumstances, there is no rational basis for forbidding the agents who were seeking to gain recognition by the same union to wear union pins as well and any attempt to interfere with this effort would clearly, under the authorities, appear to be an unlawful interference in violation of the above-quoted provisions of the Railway Labor Act.

Accordingly, plaintiffs' motion for a preliminary injunction must be, and the same hereby is, granted in all respects.

SO ORDERED.