NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

M & B CONTRACTING CORPORATION,
Respondent.

No. 80–1077.

United States Court of Appeals,
Sixth Circuit.

June 10, 1981.

Decided July 7, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., Bernard Gottfried, Director, Region 7, N.L.R.B., Detroit, Mich., David Marshall, N.L.R.B., Washington, D. C., for petitioner.

Robert J. Battista, Gregory S. Muzingo, Detroit, Mich., for respondent.

Before KEITH, MARTIN and JONES, Circuit Judges.

PER CURIAM.

The National Labor Relations Board seeks enforcement of its order [1] requiring M & B Contracting Company (M & B) to cease and desist its unfair labor practices and to reinstate with back pay two employees, Tyynismaa and Williamsen. The NLRB found that M & B violated section 8(a)(3) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.* (as amended) (1976), by discharging Tyynismaa in retaliation for union activities, and section 8(a)(3), (4), and (1) by transferring, reprimanding, and discharging Williamsen in retaliation for union activities.

M & B is a construction contractor in Novi, Michigan. M & B employs thirty truck drivers who belong to the International Brotherhood of Teamsters. M & B has bargained and coexisted with the Teamsters for almost a decade. Before 1977, M & B's truck drivers did not have an in-house union steward. In August, 1977, Tyynismaa and Williamsen mounted a campaign to appoint a steward and to correct M & B's seniority list. Two petitions were circulated among the employees and then submitted to the Union.

After the petitions were circulated, Tyynismaa and Williamsen had several spirited exchanges with Company Superintendent Kelley and President Mancuso. Apparently Kelley and Mancuso resented the petition's circulation, and each made statements to the employees which the NLRB found to be threats directed against protected activities. Kelley informed Williamsen that his attempts to become a union steward "could cause him a lot of trouble." At a later date, Kelley warned Williamsen that anybody associated with the union "could be gotten rid of." Both Kelley and Mancuso repeatedly referred to Tyynismaa as a "harasser." In our view, the record is replete with examples of threats and animosity towards both employees sufficient to sustain the section 8(a)(1) violations, which M & B does not challenge on appeal.

1. Reported at 245 N.L.R.B. No. 155.

On September 6, Kelley reassigned Williamsen from his job as a gravel truck driver to a new job as a water truck driver, over Williamsen's objection. Williamsen filed a charge with the NLRB alleging discriminatory treatment with respect to working conditions. Tyynismaa was also reassigned to a water truck and joined Williamsen in bringing charges against M & B. The Union refused to process Tyynismaa's grievance because it lacked merit. The ALJ also found that Tyynismaa's charge was unfounded, although it did find a violation with respect to Williamsen. Since M & B has not challenged the Board's findings of section 8(a)(3) and (1) violations in transferring and reprimanding Williamsen, those findings are entitled to summary enforcement. *Larand Leisurelies, Inc. v. N.L.R.B.*, 523 F.2d 814 (6th Cir. 1975).

As for the Board's conclusion that the two employees were discriminatorily discharged, we hold that these findings are supported by substantial evidence in the record. Tynnismaa was discharged in October 1977 for allegedly unauthorized use of a company truck and for drinking before driving. The NLRB dismissed M & B's reasons, finding that M & B had seized on the incident as a pretext to fire Tyynismaa for his union activity. M & B vigorously contends that Tyynismaa was discharged for cause, because he violated company policy against drinking while operating company trucks. We disagree. In light of the several uncontested § 8(a)(1) violations, and considering the paucity of evidence regarding a company investigation of the incident, we feel that there is substantial support for the conclusion that Tyynismaa's discharge was the clear result of M & B's anti-union animus.

Turning to Williamsen's discharge, we again find substantial evidence to support the conclusion that he was discharged unlawfully. Williamsen was discharged on February 7, 1978 for alleged insubordination, only six months after the petition was circulated. On February 6, 1978, Williamsen drove a company truck to a jobsite and discovered that it was broken. He tried to phone in his trouble to Kelley or Mancuso, but was only able to reach the parts manager. The record shows that Williamsen knew that he was not allowed to bring a truck back to headquarters without prior authorization from either Kelley or Mancuso. Kelley sent a mechanic to the scene to repair the truck. The mechanic told Williamsen to return the truck to the shop, "by [his] authority." Kelley and Mancuso confronted Williamsen when he returned to the shop with the truck, telling him that he had not obtained proper authorization. Williamsen was fired the next day.

The ALJ found the discharge to be pretextual, because Kelley did not return Williamsen's call, nor did he reprimand the mechanic. We hold that the nature of this act of employee misconduct and the context in which it was committed clearly support the Board's conclusion.

Accordingly, we grant enforcement of the Board's order in all respects.