U.S. ECOLOGY CORPORATION,
Petitioner–Appellant,

v.

NATIONAL LABOR RELATIONS
BOARD Respondent–
Appellee.

No. 00–1592, 00–1769.

United States Court of Appeals,
Sixth Circuit.

Dec. 14, 2001.

Before KEITH, KENNEDY and BATCHELDER, Circuit Judges.

KENNEDY, Circuit Judge.

U.S. Ecology, Inc. (the "Company"), appeals an order of the National Labor Relations Board (the "Board") finding the Company had engaged in unfair labor practices, ordering it to restore wages and benefits of the expired contract and to reimburse employees for lost wages and benefits and bargain with the Union on the terms and conditions of employment. Finding that the Board's decision is sup-

ported by substantial evidence, we enforce the Board's order in full.

The parties' collective bargaining agreement expired on February 9, 1998. Bargaining began for a new contract in January, 1998. After negotiations between the Company and the Oil, Chemical & Atomic Workers International Union, AFL–CIO (the "Union") broke down, the Union went on strike. After a short period, the employees returned to work and bargaining continued. The company finally declared an impasse and instituted its final offer. The Union filed two actions with the NLRB (consolidated by the Board) alleging violations of the National Labor Relations Act. Specifically, the Union claimed that the Company violated sections 8(a)(1) and 8(a)(5) by: (1) directing video cameras at picketers without valid justification; (2) engaging in bad faith and surface bargaining; (3) posting "as needed" job openings unilaterally and without notice to Union representatives in violation of the accepted practice; and (4) by unilaterally implementing its final offer absent a valid impasse. The matters were referred to an Administrative Law Judge ("ALJ"), who found for the Union on all three claims. On appeal, the Board affirmed the decision of the ALJ, with one Board member dissenting.[1]

 We review decisions of the NLRB under a "substantial evidence" standard. We do not overturn Board decisions "merely because we might have viewed the case differently, but neither may we simply rubber stamp the Board's decisions." *Horsehead Resource Development Company, Inc. v. NLRB*, 154 F.3d 328, 338 (6th Cir.1998) (internal citations omitted). Rather, if we find the Board had "substantial evidence" that a "reason-

able mind might accept as adequate to support a conclusion," we affirm its rulings. *Id.* Applying this standard, we affirm the Board's decision as to all three claims.

### I. Unlawful Videotaping of Picket Lines

The Board found that the Company engaged in unlawful surveillance and created the impression of surveillance in the Company's use of video cameras to record the identities of picketers as well as their license plate numbers. It is undisputed that stationary cameras at the plant were redirected toward the picket lines and that private security guards hired by the Company used hand-held cameras to record the identities of picketers. The Company argues first that it is not responsible for the actions of the security guards, since it gave no direct instruction that they take such action. Second, the Company asserts that the threat of violence between replacement workers and strikers gave them the valid purpose required by our decisions, *e.g.*, *Larand Leisurelies, Inc. v. NLRB*, 523 F.2d 814, 819 (6th Cir.1975), to record strikers. *See also Glomac Plastics*, 234 NLRB 1309, 1320 (1978) ("The Board has frequently held that, absent unusual circumstances, it constitutes unlawful surveillance of protected concerted activities for an employer to photograph his employees' peaceful picketing.").

 We find that the Board had substantial evidence at its disposal to conclude that the foreseeable effect of the videotaping would be to intimidate strikers and that no unusual circumstances providing a valid justification existed. The record indicates there was no evidence of any picket

---

1. The ALJ had also found that the company had engaged in direct dealings with employees. The Board found that the Company did not engage in unlawful direct dealing and dismissed this allegation. That finding is not a part of this appeal.

misconduct. The record further indicates that the only matter which attracted the Company's attention was an alleged assault by a non-striking employee on a picketer, not misconduct by striking employees. The Company recorded picket lines at all times, not just when non-strikers were crossing the lines, which would be the moment when violence was most likely. In addition, the Company aimed its cameras at the Union's headquarters, where there was no risk of violence. Finally, the Company, at times, pointed at strikers cameras without tapes (and therefore incapable of recording violent incidents). These facts provide circumstantial evidence to support the ALJ's finding that the Company had no suitable justification to videotape its striking employees and that, in light of this, its actions constituted surveillance and created an impression of surveillance in violation of Section 8(a)(1). That the security guards were not specifically instructed to record the picketers' identities is no defense, since they were acting as agents of the corporation and their actions were reasonably foreseeable.

## II. Bad Faith and Surface Bargaining

██ The Board also found that the Company engaged in bad faith and surface bargaining in violation of its statutory obligation to "bargain collectively with the representatives of [its] employees" and to "confer in good faith." 29 U.S.C. Sections 158(a)(5) and 158(d). The Company argues that the Board improperly relied on hearsay evidence: the testimony of a Union vice president that a Company negotiator had said to him that the plant manager and human resources manager anticipated no agreement regardless of Union concessions and that the Company wanted to "force [the union] out." J.A. at 510. The Company characterizes this testimony as inadmissable hearsay, rather than the admissible statement of a party

opponent. However, because the company did not make a timely objection to the statement, it has waived this argument. *See Iron Workers Local 46*, 320 NLRB 982 fn. 1, 1996 WL 137490 (1996), *enf. denied on other grounds*, 149 F.3d 93 (2nd Cir.1998). No company officer testified to rebut the testimony of the Union representative, which the ALJ found credible. The Company manager repeatedly stated he could not remember whether he said those things or not. The ALJ expressly refused to credit the testimony of the other management personnel present when the statements were made.

The testimony of the Union vice president, as well as the fact that the Union later offered economic concessions nearly identical to the Company's early proposals (and these were rejected by the Company), provides a basis for the Board's conclusion. The ALJ also relied on the Union's announcement at the last bargaining session that it had more "moves." It had made a number of concessions, though it did not announce what concessions it was still considering. The ALJ found that the Union had no time to do so, because the Company immediately posted a letter announcing implementation of the terms of its final offer.

We cannot agree with the ALJ's assessment of the Company's financial condition as being positive. The Company's disclosures indicate that it was suffering losses, and though its fortunes had improved of late, that merely indicates a reduction in losses. We need not rule on whether the ALJ's findings on this issue are "clear error," because the ALJ and the Board had a substantial evidentiary basis to conclude that the company engaged in bad faith bargaining. The credited hearsay statement discussed above provides that basis.

Because we affirm the Board's finding of surface bargaining, we conclude, as did the Board, that no valid impasse existed and therefore that the Company violated Sections 8(a)(1) and (5) of the National Labor Relations Act by unilaterally implementing its final offer. *See United Paperworkers Int'l Union v. NLRB*, 981 F.2d 861, 866 (6th Cir.1992) (an employer violates Section 8(a)(5) of the National Labor Relations Act if it unilaterally institutes changes in existing terms or conditions of employment prior to bargaining to an impasse). That parties bargain in good faith is a prerequisite for a finding that the parties had reached a valid impasse. *See NLRB v. Plainville Ready Mix Concrete Co.*, 44 F.3d 1320, 1326 (6th Cir.1995).

### III. Unilateral Posting of "as-needed" Job Openings

 The Board's final finding focused on the Company's unilateral decision to post for bidding "as-needed" jobs after implementing its final offer. "[A]n employer commits an unfair labor practice if ... it effects a unilateral change of an existing term or condition of employment" without providing employee bargaining representatives advance notice and an opportunity to bargain. *Litton Financial Printing v. NLRB*, 501 U.S. 190, 198, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991).

The Board found that the Union did not have prior notice of this practice, since at most it was aware of one instance in which the company posted an "as-needed" position in the past, App. at 31, and therefore that the Company could not post "as needed" positions without affording the Union notice and the opportunity to bargain. The Company's argument is not that the Board committed a substantive error, but rather that the matter should have been referred to an arbitrator, as it did in another similar case, *Collyer Insulated Wire*,

192 NLRB 837 (1971). The Board found that it need not do so where an employer shows manifest hostility to the principles of collective bargaining. App. at 30. This ruling is consistent with the Board's precedent, *see Kenosha Auto Transport Corp. v. NLRB*, 302 NLRB 888, 896 n. 4, 1991 WL 150559 (1991), and is not error as a matter of law. The Board's findings as to the Union's surface bargaining claim provide a basis for concluding the Company demonstrated such hostility.

For the foregoing reasons, we enforce the orders of the Board in full.